1

2

3

4 UNITED STATES DISTRICT COURT

5 DISTRICT OF NEVADA

6 * * *

7 UNITED STATES OF AMERICA,                     Case No. 2:98-cr-0309-KJD-RJJ

8                                 Plaintiff,        **ORDER**

9       v.

10 HAKIM MOHAMMED WILLIAMS,

11                                 Defendant.

12          Hakim Williams moves for compassionate release under the First Step Act due to the

13 spread of the novel coronavirus and its related disease, COVID-19 (ECF No. 320). Williams has

14 served nearly twenty-two years of a life sentence he received for his part in a brazen, take-over

15 style bank robbery in 1998.[1] He is now in his early sixties and suffers from several health

16 conditions, including stage-four chronic kidney disease, prostate cancer, high blood pressure, and

17 pulmonary embolisms. Williams asks the Court to reduce his sentence and allow him to

18 complete the remainder in home confinement. The United States opposes Williams's request

19 (ECF No. 324). Though the government agrees that Williams's motion is properly before the

20 Court and that Williams's health conditions place him at a high risk to contract and suffer from

21 COVID-19, it opposes release because Williams would represent a danger to the community.

22 While the Court is empathetic to Williams's health challenges, it agrees with the government that

23 his criminal history shows that he remains a danger to the community. Accordingly, Williams's

24 emergency motion for compassionate release (ECF No. 320) is denied.

25

26

27          [1] Accompanying this order is an order granting in part Williams's separate petition to vacate his sentence
under 28 U.S.C. § 2255. In that order, the Court concluded that Williams lacked sufficient predicate offenses to
28 qualify for 18 U.S.C. § 3559(c)(1)'s mandatory life sentence. As a result, Williams's life sentence has been vacated,
and he will be resentenced.

The Court and the parties are familiar with the facts of Williams's case. Williams is incarcerated at FCI Victorville Med. II, where he is serving a life sentence for armed bank robbery. By all accounts, Williams has been a model inmate during his time at FCI Victorville. In late 2019, Williams was diagnosed with stage-four chronic kidney disease. D.'s Emergency Mot. for Comp. Rel. 14, ECF No. 320 ("Emergency Motion"). The disease affects the kidney's ability to filter waste and fluid from the blood. Stage four is considered serious, and at stage five a patient will require a transplant or sustained dialysis.[2] Shortly after Williams learned of his kidney disease, he was diagnosed with prostate cancer. Emergency Motion at 13. Williams has begun chemotherapy treatment for the cancer. D.'s Reply 2, ECF No. 325. Williams has also been diagnosed with and treated for blood clots in his lungs and high blood pressure. Emergency Motion at 16–17.

In early 2020, the novel coronavirus began its spread throughout the United States and the rest of the world. Its effects have been far reaching and widely publicized.[3] While the Court need not dwell on the havoc wreaked by COVID-19, it is sufficient to note that some individuals suffer a greater risk of contracting and suffering from the virus. Though the virus has not proven as deadly for the young and otherwise healthy,[4] certain populations suffer an increased risk of the virus's effects. These high-risk individuals include people suffering from diabetes, high blood pressure, asthma, chronic kidney disease, or any other medical condition that weakens the immune system.[5] Williams checks multiple boxes. He suffers from chronic kidney disease, high blood pressure, and he is receiving chemotherapy for prostate cancer, which weakens his

---

[2] , Stages of Chronic Kidney Disease (CKD), American Kidney Fund, (Updated June 17, 2020), https://www.kidneyfund.org/kidney-disease/chronic-kidney-disease-ckd/stages-of-chronic-kidney-disease/.

[3] More than 3 million Americans have been infected by the virus and over 120,000 have died nationwide. See Cases in the U.S., Ctrs. for Disease Control and Prevention, (Updated July 9, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[4] See Weekly Updates by Select Demographic and Geographic Characteristics, Ctrs. for Disease Control and Prevention, (Updated: July 8, 2020), https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex.

[5] People Who Are at Increased Risk for Severe Illness, Ctrs. for Disease Control and Prevention, (Updated June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fpeople-at-higher-risk.html.

immune system. In light of those underlying medical conditions, Williams seeks compassionate release.

Generally, the Court may not revise a defendant's sentence absent statutory justification. A court's imposition of sentence represents a final disposition of a criminal case, and there is a benefit to that finality. However, where extraordinary and compelling reasons justify a sentence modification after the fact, the Court enjoys authority to reduce an offender's term of imprisonment, impose probation, or fashion a term supervised release. 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) allows the Court to consider a modification request on motion by the Bureau of Prisons or by the defendant after the defendant has exhausted his administrative remedies. A defendant must first petition the warden for a modification before he may petition the Court. A defendant's request for modification is not timely until he has pursued all available intra-facility appellate rights or thirty days has lapsed since the defendant petitioned the warden for release. Id. Williams submitted his request to FCI Victorville on April 8, 2020 and has not received a response. More than thirty days have passed since April 8. Accordingly, the Court has jurisdiction to consider his motion under § 3582(c)(1)(A).

Next, Williams must show "extraordinary or compelling reasons" that justify a sentence reduction. Id. § 3582(c)(1)(A)(i). The policy statement to § 3582(c)(1)(A) lists three factors to guide the Court's evaluation of exceptional or compelling reasons. The Court considers whether the defendant: (1) is at least 65 years old; (2) is experiencing a serious deterioration in physical or mental health due to the aging process; and (3) has served at least 10 years or 75 percent of his or her prison term, whichever is less. U.S.S.G. § 1B1.13 cmt. n.1(A). The policy statement is clear, however, that modification is not warranted if the defendant would be a "danger to the safety of any other person in the community." Id. § 1B1.13 cmt. n.1 (extraordinary and compelling reasons exist so long as the defendant is not a danger to the community under 18 U.S.C. § 3142(g)).

Despite Williams's current health conditions and his increased risk of complications from COVID-19, modification is unwarranted because he would present a danger to the community if released. Williams's criminal history is lengthy and violent. Over a period of six years in the

1  1980s, Williams was involved in two shootings, one of which resulted in the death of the victim.

2  The second incident involved Williams shooting a sleeping man in the back seat of a car and

3  then leaving the man to die. Fortunately, the victim survived that attack, and Williams faced only

4  attempted murder charges. If those two events were not enough, Williams then carried out an

5  armed take-over style bank robbery for which he is serving a life sentence. That robbery

6  occurred only years after Williams was paroled on his attempted murder charge.

7           Despite that criminal history, Williams argues that his behavior while incarcerated shows

8  that he has been rehabilitated and no longer presents a threat to the community. Setting aside that

9  rehabilitation "is not, by itself, an extraordinary and compelling reason" for release (U.S.S.G.

10  § 1B1.13 cmt. n.3), Williams's history shows that the only time he has not represented a danger

11  to the community has been while he was incarcerated. The short time between three very serious

12  crimes demonstrates that he has not been able remain lawful. Making matters worse, each of

13  Williams's prior offenses has involved the use of a firearm. Williams's willingness to unlawfully

14  own—and use—and use a firearm concerns the Court because his health challenges and

15  somewhat advanced age would not prevent him from unlawfully owning or using a firearm again

16  in the future. Accordingly, the Court cannot find that Williams would not present a danger to the

17  community if released.

18           Finally, Williams argues that his risk of contracting COVID-19 is much greater in

19  custody than out of custody. He claims that the BOP has done nothing to stem the spread of the

20  virus, that he cannot socially distance, and that inmates lack access to sanitizing products.

21  However, the Court cannot say that Williams is any more likely to contract the virus inside the

22  facility than outside of it. According to the BOP, thirty-two inmates and two staff members have

23  tested positive for the virus at FCI Victorville Med. II.[6] There are over 1,200 inmates at the

24  facility. Meanwhile, California has reported record numbers of positive tests over several

25

26

27  _____

28           [6] COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 10, 2020).

weeks.[7] Kern County, where Williams requests to be released, is no exception.[8] Therefore, the Court is not persuaded that the BOP's failure to stem the spread of the virus at FCI Victorville Med. II justifies release here.

Accordingly, IT IS HEREBY ORDERED that Hakim Williams's Emergency Motion for Compassionate Release Under the First Step Act (ECF No. 320) is **DENIED**.

Dated this 10th day of July, 2020.

_____
Kent J. Dawson
United States District Judge

---

[7] COVID-19 Updates, Cal. Dept. of Pub. Health, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx (last accessed July 10, 2020).

[8] COVID-19 Dashboard, Kern Cty. Pub. Health Svcs. (updated July 10, 2020), https://kernpublichealth.com/covid-19_dashboard/ (also reporting an increase in positive cases).