1

2

3

4                    UNITED STATES DISTRICT COURT

5                         DISTRICT OF NEVADA

6                                * * *

7    UNITED STATES OF AMERICA,              Case No. 2:98-cr-0309-KJD-RJJ
                                            Related Case: 2:16-cv-1486-KJD
8                      Plaintiff/Respondent,
                                                      **ORDER**
9          v.

10   HAKIM MOHAMMED WILLIAMS,

11                    Defendant/Petitioner.

12         Hakim Williams is currently serving a mandatory life sentence for his part in the armed

13   robbery of a Wells Fargo Bank in August of 1998. Williams received such a harsh sentence

14   because his prior felony convictions qualified him for sentencing enhancements under 18 U.S.C.

15   § 3559, the federal three strikes law, and § 4B1.2 of the then-mandatory United States

16   Sentencing Guidelines, which classified Williams as a career offender. On top of Williams's life

17   sentence, he received a five-year consecutive sentence under 18 U.S.C. § 924(c) because he

18   carried a firearm during the armed bank robbery. Williams now moves to vacate his conviction

19   under 18 U.S.C. § 2255 (ECF No. 260). He argues that his § 3559 life sentence is now

20   unconstitutional because his predicate convictions for attempted second-degree murder and

21   voluntary manslaughter no longer qualify as serious violent felonies after Johnson v. United

22   States, 135 S. Ct. 2551 (2015). Williams similarly argues that he no longer has sufficient

23   predicate offenses to be deemed a career offender under U.S.S.G. § 4B1.2. Finally, Williams

24   argues that his armed bank robbery charge does not support his separate § 924(c) conviction

25   because it no longer qualifies as a crime of violence. The government has responded in

26   opposition (ECF No. 262), and Williams has replied (ECF No. 264). The Court ordered

27   additional briefing, which the parties have since provided.

28         The Court has reviewed Williams's original and supplemental filings and finds that his

1   petition is timely as to his § 3559 and § 924(c) challenges but untimely as to his challenge to the

2   United States Sentencing Guidelines. As to the merits of Williams's challenge to § 3559, he is

3   correct that his predicate offense of voluntary manslaughter no longer qualifies as a serious

4   violent felony. Williams's life sentence, therefore, must be vacated. However, Williams's

5   § 924(c) challenge fails because his current conviction—armed bank robbery—categorically

6   qualifies as a crime of violence. Therefore, Williams's petition is granted in part and denied in

7   part, and Williams will be resentenced.

8   **I.   <u>Background</u>**

9       Williams and two co-defendants planned and carried out a takeover-style robbery of a

10  Wells Fargo Bank in Las Vegas in August of 1998. Williams and one of his co-defendants

11  entered the bank while the third waited in the car. Once inside the bank, the defendants ordered

12  the patrons and employees to the floor. While one guarded the door with a shotgun, the other

13  jumped the counter and emptied the teller drawers into a pillowcase. Then they fled. All three

14  were arrested shortly after the robbery. At the time of the arrests, police recovered over $72,000

15  in cash and three firearms. Superseding Indictment 4, ECF No. 25.

16      Williams was charged by indictment with armed bank robbery and use of a firearm in

17  relation to a crime of violence on August 17, 1998. Indictment, ECF No. 1. The government

18  superseded the indictment in early 1999 and charged Williams with conspiracy to commit armed

19  bank robbery (count one), armed bank robbery; aiding and abetting (count two), use of a firearm

20  in connection to a crime of violence (count three), and felon in possession of a firearm (count

21  six). Superseding Indictment, ECF no. 25. Shortly thereafter, the government filed a criminal

22  information that indicated its intent to seek a mandatory life sentence under 18 U.S.C.

23  § 3559(c)(1), the so-called "federal three-strikes rule." The information listed two of Williams's

24  prior felony convictions that qualified as serious violent felonies: voluntary manslaughter (Cal.

25  Penal Code § 192.1) and attempted murder (Cal. Penal Code § 664/187). Information 2, ECF No.

26  32. The armed bank robbery would be Williams's third strike.

27      Williams went to trial on the bank robbery and § 924(c) charges in May of 1999. The

28  Court severed Williams's felon-in-possession charge and tried it separately to avoid tainting the

1    jury with details of Williams's prior felony convictions. Order, ECF No. 61. The first jury

2    convicted Williams on each count: conspiracy (count one), armed bank robbery (count two), and

3    use of a firearm in relation to a crime of violence (count three). Verdict, ECF No. 78. The second

4    jury also convicted Williams of the bifurcated felon-in-possession charge (count six).

5          Because the government sought a mandatory life sentence under the federal three-strikes

6    rule, Williams's sentencing was brief. The Court recited the guidelines calculation, which

7    yielded an adjusted offense level of thirty-seven and a criminal history category of V. Sent.

8    Trans. 6, ECF No. 313. The Court noted, however, that because Williams qualified as a career

9    offender under U.S.S.G. § 4B1.2, his criminal history category must be VI. Id. The Court opined

10   that it was unfortunate that Williams was in the position he was and that he appeared to be a

11   thoughtful, articulate person. Id. at 10. However, Williams's criminal history mandated a life

12   sentence, "the most serious" penalty the Court could give. Id. The Court sentenced Williams to

13   five-years' custody on the conspiracy charge (count one), to a mandatory life sentence on the

14   armed bank robbery charge (count two), to ten-years' custody on the felon-in-possession charge

15   (count six), and to five-years' custody on the use of a firearm in connection to a crime of

16   violence charge (count three). Each of Williams's sentences run concurrent to one another with

17   the exception of his five-year sentence for use of a firearm during a crime of violence, which

18   runs consecutive. The Court also imposed five years of supervised release in the event Williams

19   was ever released. Id. at 12. Williams did not appeal.

20         After serving more than twenty-two years of his life sentence, Williams moved to vacate

21   his mandatory life sentence, his career-offender designation, and his five-year consecutive

22   sentence under 18 U.S.C. § 924(c). He claims that the Supreme Court's decision in Johnson v.

23   United States, 135 S. Ct. 2551 (2015), both restart the statutory period to challenge his sentence

24   under 28 U.S.C. § 2255 and invalidates his life sentence. The government opposed the petition,

25   and Williams replied. Following Williams's reply, the Supreme Court and Ninth Circuit issued a

26   number of cases that potentially affect the outcome of Williams's motion. The Court asked the

27   parties to provide briefing on two questions in late 2019: (1) what effect, if any, United States v.

28   Davis, 139 S. Ct. 2319 (2019) and United States v. Blackstone, 903 F.3d 1020 (9th Cir. 2018)

1   had on Williams's petition, and (2) which prong of 18 U.S.C. § 924(c) formed the basis of

2   Williams's § 924(c) conviction. See Minute Order, ECF No. 294. Williams has since

3   supplemented his original petition (ECF No. 316), the United States filed a supplemental

4   response (ECF No. 317), and Williams filed a supplemental reply (ECF No. 319). The petition is

5   now fully briefed and ripe for review.

6   **II.    Legal Standard**

7       Title 28 U.S.C. § 2255 allows a defendant in federal custody to challenge his conviction

8   on the grounds that it "was imposed in violation of the Constitution or laws of the United States."

9   28 U.S.C. § 2255(a). Though § 2255 allows certain collateral attacks to a judgment of

10  conviction, it is not intended to give criminal defendants multiple opportunities to challenge their

11  sentences. United States v. Dunham, 767 F.2d 1395, 1397 (9th Cir. 1985). Rather, § 2255 limits

12  relief to cases where a "fundamental defect" in the defendant's proceedings resulted in a

13  "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974). That

14  limitation is based on the presumption that a defendant whose conviction has been upheld on

15  direct appeal has been fairly and legitimately convicted. United States v. Frady, 456 U.S. 152,

16  164 (1982).

17      The Court assumes that a judgment of conviction is valid once a defendant has waived or

18  completed his appeal. Id. For that reason, the United States need not respond to a § 2255 petition

19  until ordered to do so. Rule 4(b) of the Rules Governing § 2255 Petitions requires the Court to

20  promptly review each § 2255 petition. If the Court cannot summarily dismiss the petition, it must

21  order the United States attorney to respond. After reviewing the government's response, the

22  Court must hold an evidentiary hearing unless the record makes clear that the petitioner is not

23  entitled to relief. United States v. Espinoza, 866 F.2d 1067, 1069 (9th Cir. 1988). Alternatively,

24  the Court may dismiss the petition without response or hearing if it is clear from the record that

25  the petitioner does not state a claim for relief or if the claims are frivolous or palpably incredible.

26  United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989) (citing Baumann v. United States,

27  692 F.2d 565, 570–71 (9th Cir. 1982)).

28

III.   **Discussion**

As an initial matter, the Court finds that an evidentiary hearing is unnecessary in this case. An evidentiary hearing is necessary if a petitioner's claims rely on facts outside the record that the Court cannot be decided "on the basis of documentary testimony and evidence in the record." United States v. Espinoza, 866 F.2d 1067, 1069 (9th Cir. 1989); Shah v. United States, 878 F.2d 1156, 1158–59 (9th Cir. 1989). Williams's petition does not require review of any occurrence outside the record, nor does it require the Court to make factual or credibility findings. Thus, an evidentiary hearing is unwarranted.

Williams challenges three separate aspects of his conviction and sentencing: the Court's application of the federal three-strikes rule to impose a mandatory life sentence, the Court's imposition of U.S.S.G. § 4B1.2's career-offender enhancement, and the Court's imposition of a five-year consecutive sentence under 18 U.S.C. § 924(c). The common thread through Williams's challenges is that his felony convictions no longer qualify as violent felonies under their respective criminal statutes or sentencing guidelines. Whether Williams's prior convictions qualify as "violent felonies" is less clear than one might think. However, before the Court reaches that question, Williams must show that each claim is timely under § 2255. Once Williams has cleared that hurdle, the Court may determine whether his predicate offenses qualify him for the sentencing enhancements he received.

### A.  Timeliness of Williams's Claims

The limitations periods for habeas petitions like Williams's are governed by the Antiterrorism and Effective Death Penalty Act of 1966 (AEDPA). AEDPA sought to streamline the finality of appeals and habeas petitions and eliminate delays in the process. Holland v. Florida, 560 U.S. 631, 648 (2010). To that end, § 2255(f) imposed a twelve-month limitations period on all habeas claims by defendants in federal custody. Any petition filed outside that twelve-month period fails as untimely unless the petitioner shows that an extraordinary circumstance kept him from filing despite diligently pursuing his rights. United States v. Buckles, 647 F.3d 883, 889 (9th Cir. 2011).

1    There are four triggering events that start § 2255(f)'s twelve-month limitations period.

2    They are:

3          1.   the date on which the judgment of conviction becomes final;

4          2.   the date on which the impediment to making a motion created
5               by governmental action in violation of the Constitution or laws
6               of the United States is removed, if the movant was prevented
               from making a motion by such governmental action;

7          3.   the date on which the right asserted was initially recognized by
8               the Supreme Court, if that right has been newly recognized by
9               the Supreme Court and made retroactively applicable to cases
               on collateral review; or

10         4.   the date on which the facts supporting the claim or claims
11              presented could have been discovered through the exercise of
12              due diligence.

13   28 U.S.C. § 2255(f). The four triggering events guarantee that every federal prisoner will have at

14   least one opportunity to collaterally attack a conviction. The first triggering event starts when the

15   defendant's judgment of conviction becomes final. This may happen shortly after sentencing if

16   the defendant elects not to appeal or after the conviction is affirmed on appeal. See United States

17   v. Garcia, 210 F.3d 1058, 1060 (9th Cir. 2000).

18   A movant who fails to file a § 2255 petition within one year of his judgment becoming

19   final must wait for some outside event to reopen the window to file. Section 2255(f)(2)–(4)

20   outlines the three outside events that restart the clock. Williams's petition hinges on the third

21   triggering event: that the Supreme Court has recognized a previously unavailable right and made

22   that right retroactively applicable for cases on collateral review. Id. § 2255(f)(3). Williams points

23   to Johnson v. United States as the triggering event that restarted his one-year window under

24   § 2255. 135 S. Ct. 2551 (2015).

25   In Johnson, the Supreme Court analyzed the residual clause of the Armed Career

26   Criminal Act (ACCA). The ACCA (codified at 18 U.S.C. § 924(e)(2)(b)) imposes a minimum

27   fifteen-year, non-probationable sentence on any defendant who has three prior convictions for

28   "violent felon[ies]" or "serous drug offense[s]." 18 U.S.C. § 924(e)(1). The problem with the

1   ACCA, however, was the definition of the term "violent felony." To qualify as a "violent

2   felony," and therefore become a predicate offense at sentencing, the defendant's prior conviction

3   must be punishable by a term of imprisonment longer than one year and must meet one of three

4   additional requirements. First, the prior conviction qualifies if the crime "has an element the use,

5   attempted use, or threatened use of physical force against the person of another." Id.

6   § 924(e)(B)(i). This has come to be known as the ACCA's "elements clause." Next, the crime

7   qualifies if it falls into an enumerated group of offenses, including "burglary, arson, or extortion

8   . . . [or] use of explosives." Id. § 924(e)(B)(ii). This has come to be known as the "enumerated

9   clause." Finally, for prior crimes that do not fit in the elements or enumerated clauses, the ACCA

10  included a catch-all clause known now as the "residual clause." The residual clause included any

11  prior conviction that "involves conduct that presents a serious potential risk of physical injury to

12  another." Id.

13      Johnson invalidated the ACCA's residual clause because it was unconstitutionally vague.

14  The Fifth Amendment's due process protections guarantee that the government cannot take away

15  one's life or liberty through vague criminal laws. Johnson, 135 S. Ct. at 2556. At minimum, a

16  criminal law must give "ordinary people fair notice" of what crime the statute punishes. Id.

17  (citing Kolender v Lawson, 461 U.S. 352, 357–58 (1983)). The prohibition on vague criminal

18  laws applies also to statutes like the ACCA, which fixes an offender's sentence. United States v.

19  Batchelder, 442 U.S. 114, 123 (1979). The problem with the ACCA's residual clause is that the

20  language punishing "conduct that presents a serious risk of physical injury" is too broad to notify

21  the ordinary person of what the proscribed conduct actually is. Johnson, 135 S. Ct. at 2557. The

22  residual clause forces a judge to calculate the level of risk inherent in the alleged predicate crime,

23  using four enumerated offenses: burglary, arson, extortion, and crimes involving the use of

24  explosives. Id. at 2558. However, those enumerated crimes shed little light on what level of

25  potential violence suffices to label a prior conviction a "violent felony." In essence, the residual

26  clause "invites arbitrary enforcement by judges" without providing sufficient notice. Id. And so,

27  the ACCA's residual clause violates the Fifth Amendment's due process protections.

28

1    <u>Johnson</u>'s practical result was far reaching. By invalidating the ACCA's residual clause,

2    the Supreme Court remanded Johnson's case for resentencing and prevented the ACCA's

3    residual clause from increasing criminal sentences in the future. However, <u>Johnson</u>'s effect on

4    defendants previously sentenced under the residual clause was unclear until the next year when

5    the Supreme Court made <u>Johnson</u> retroactive on collateral review. In <u>Welch v. United States</u>, the

6    Court clarified that its decision in <u>Johnson</u> announced a new substantive rule of criminal law that

7    applied retroactively. 136 S. Ct. 1257, 1266 (2016). <u>Welch</u> acknowledged that the ACCA's

8    residual clause could no longer authorize any sentence—past or future. <u>Id.</u> That opened the door

9    for thousands of defendants to collaterally attack their sentences imposed under the ACCA's

10   residual clause.

11           Williams relies on the rule announced in <u>Johnson</u> to make his petition timely under

12   § 2255(f)(3). He argues that <u>Johnson</u>'s holding also invalidates the federal three-strikes rule,

13   U.S.S.G. § 4B1.2, and 18 U.S.C. § 924(c) even though <u>Johnson</u> did not explicitly mention those

14   particular statutes. Williams contends his petition is timely so long as it was filed within one year

15   of <u>Johnson</u> because the residual clauses in the three-strikes rule, U.S.S.G. § 4B1.2, and § 924(c)

16   "bear more than a passing resemblance" to the ACCA. <u>United States v. Davis</u>, 139 S. Ct. 2319,

17   2325 (2019). There is some support for Williams's argument. The Supreme Court has

18   invalidated each statutory residual clause that it has evaluated since <u>Johnson</u>. Starting with

19   <u>Sessions v. Dimaya</u>, the Supreme Court invalidated a similar residual clause in 18 U.S.C.

20   § 16(b)'s definition of "crime of violence." 138 S. Ct. 1204, 1223 (2018). The Immigration and

21   Nationality Act (INA) makes an undocumented individual deportable if convicted of an

22   "aggravated felony." <u>Id.</u> at 1210. The presence of an aggravated felony makes removal "a virtual

23   certainty" for aliens facing deportation. <u>Id.</u> at 1211. One of the ways the government could prove

24   an aggravated felony was by showing the alien had been convicted of a "crime of violence" as

25   defined in 18 U.S.C. § 16(b). Section 16(b)'s residual clause is almost identical to the ACCA's.

26   It defined "crime of violence" as "any other offense that is a felony and that, by its nature,

27   involves a substantial risk that physical force against the person or property of another may be

28   used in the course of committing the offense." 18 U.S.C. § 16(b). In striking down § 16(b)'s

1    residual clause, the Court noted that the residual clauses of the ACCA and § 16(b) suffered from

2    the same two deficiencies. They both required a sentencing court to analogize the defendant's

3    prior convictions to the "ordinary case" of that crime while failing to provide fair notice of the

4    conduct punished in the statute. Dimaya, 138 S. Ct. at 1223.

5           Most recently, the Supreme Court extended Johnson to the residual clause of 18 U.S.C.

6    § 924(c)(3)(B). Davis, 139 S. Ct. at 2336. Like the ACCA, § 924(c) imposes an enhanced

7    sentence on offenders who carry a firearm in relation to a "crime of violence." 18 U.S.C.

8    § 924(c)(1)(A). A conviction under § 924(c) yields a minimum five-year consecutive sentence.

9    Id. § 924(c)(1)(A)(i)–(iii). Like the ACCA, § 924(c) defined "crime of violence" with an

10   elements clause and residual clause. The residual clause covered any felony "that by its nature,

11   involves a substantial risk that physical force against the person or property of another may be

12   used in the course of committing the offense." Id. § 924(c)(3)(B). Citing Johnson and Dimaya,

13   Davis reaffirmed that "the imposition of criminal punishment can't be made to depend on a

14   judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" 139 S. Ct.

15   at 1226. So, like the residual clauses in the ACCA and § 16(b), § 924(c)'s residual clause

16   violated due process.

17          The lone exception to the Court striking down a seemingly vague residual clause is

18   Beckles v. United States, 137 S. Ct. 886 (2017). There, the Court reviewed the residual clause of

19   U.S.S.G. § 4B1.2(a), which labeled a defendant a "career offender" if he had three felony

20   convictions that qualified as "crime[s] of violence." The career-offender designation enhanced a

21   defendant's sentence by increasing the criminal history category to VI regardless of what

22   criminal history category would have applied. U.S.S.G. § 4B1.1. The sentencing guidelines'

23   residual clause was functionally identical to the clauses the Court struck down in Johnson and

24   would later strike down in Dimaya and Davis. But the Court allowed the career-offender

25   guideline to stand. It found that the advisory guidelines did not actually fix a defendant's

26   sentence like the ACCA. The guidelines merely provided a sentencing range that the sentencing

27   judge had complete discretion to accept or reject. Beckles, 137 S. Ct. at 892. Because the

28   guidelines were advisory, they were not subject to a void-for-vagueness challenge. Id. at 894–95.

1    It is against that backdrop of cases that Williams claims his current petition is timely.

2  Williams acknowledges that the only way his petition may proceed is if the Supreme Court

3  recognized a new right and made it retroactively available on collateral review. See 28 U.S.C.

4  § 2255(f)(3). That presents two questions. First, did Johnson recognize a new right that was not

5  previously available to Williams? And if so, did Williams file his petition within twelve months

6  of Johnson? The second question yields the easier answer. Johnson was decided June 26, 2015,

7  and Williams filed his first petition on June 22, 2016—fewer than twelve months later.

8    Whether Johnson recognized a new right and made that right retroactive to each of

9  Williams's current claims is somewhat murkier. The parties agree that Williams's challenges to

10  the federal three-strikes rule (18 U.S.C. § 3559) and § 924(c) are timely. That is in line with the

11  clear progression of Supreme Court cases, which have systematically invalidated *statutory*

12  residual clauses that fix or enhance an offender's sentence. That progression includes Davis,

13  which explicitly invalidated § 924(c)'s residual clause. As for Williams's challenge to § 3559,

14  the residual clause there is functionally identical to the residual clauses the Supreme Court has

15  already invalidated. Therefore, Williams's challenge to the federal three-strikes rule and § 924(c)

16  are timely, and the Court will reach the merits of those claims.

17    The parties disagree whether Williams's challenge to the career-offender sentencing

18  guideline (U.S.S.G. § 4B1.2) is timely after Johnson. Williams argues that the right announced in

19  Johnson—that a criminal defendant has a due process right not to be sentenced under an

20  unconstitutionally vague statute—applies with equal force to mandatory sentencing guidelines.

21  Beckles was clear that the *advisory* guidelines are not subject to a void-for-vagueness challenge

22  because they merely guided the sentencing court's already broad discretion. 137 S. Ct. at 895–

23  96. In that sense, the advisory sentencing guidelines did not actually fix a defendant's sentence

24  like criminal statutes do. However, at the time of Williams's sentencing, the sentencing

25  guidelines were binding on district courts. See United States v. Booker, 543 U.S. 220, 233

26  (2005) (as late as 2005, the sentencing guidelines were "not advisory; they [were] mandatory and

27  binding on all judges").

28

The United States argues that the Supreme Court has not recognized any right to challenge the sentencing guidelines—mandatory or advisory. Until the Supreme Court explicitly recognizes that the mandatory guidelines are subject to a void-for-vagueness challenge, the government contends, such a challenge cannot be timely. Therefore, the timeliness of Williams's challenge to the sentencing guidelines depends on whether the mandatory nature of the sentencing guidelines in 1998 insulate them from Beckles's exemption of void-for-vagueness challenges.

Beckles is silent on whether the mandatory guidelines are subject to void-for-vagueness challenges. 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring). However, the Ninth Circuit has determined that Johnson did not open the door for defendants to challenge the mandatory sentencing guidelines in United States v. Blackstone, 903 F.3d 1020, 1025–26 (9th Cir. 2018). The Blackstone court faced two issues: (1) whether the Supreme Court recognized the right to challenge residual clauses in the sentencing guidelines and (2) whether Johnson recognized a new right applicable to § 924(c)'s residual clause. Blackstone determined that Johnson did not reach the sentencing guidelines or the residual clause in § 924(c). Id. at 1029. Admittedly, the § 924(c) section of the Court's opinion did not age well. Less than a year after Blackstone, the Supreme Court issued Davis, finding that the Johnson, Welch, and Dimaya line of cases indeed applied to § 924(c)'s residual clause. Thus, Davis effectively abrogated Blackstone to the extent that Blackstone refused to reach the merits of a challenge to § 924(c).

Blackstone's finding that Johnson did not open the door to § 2255 challenges to the mandatory guidelines, however, remains good law. Blackstone was issued shortly after the Supreme Court declined to invalidate the advisory guidelines in Beckles. Recognizing that the Supreme Court often cautions the Ninth Circuit against overreading the rights extended by their decisions, Blackstone refused to extend the holdings in Johnson and Welch to the mandatory sentencing guidelines. Id. at 1026 ("it is not always obvious whether and how the Supreme Court will extend its holdings to different contexts"). The Ninth Circuit's hesitance to extend Johnson to the sentencing guidelines is understandable. After all, Beckles vacated the Ninth Circuit's prior decision that Johnson applied to the sentencing guidelines. See United States v. Hernandez-

1  Lara, 817 F.3d 651, 653 (9th Cir. 2016) (per curium), vacated and remanded, 138 S. Ct. 1976

2  (2018). Blackstone's refusal to extend Johnson to the mandatory sentencing guidelines is valid

3  and on point. Because Johnson did not open the door for collateral attacks on the mandatory

4  sentencing guidelines, Williams's challenge is untimely.[1] Therefore, the Court cannot reach the

5  merits of that claim.

6        In sum, Johnson is the triggering event under 28 U.S.C. § 2255(f)(3) that restarted the

7  twelve-month clock to collaterally attack Williams's sentence. Williams's challenges to his

8  § 924(c) conviction and his mandatory life sentence under 18 U.S.C. 3559 are timely, and the

9  Court will reach the merits of those claims. Williams's challenge to U.S.S.G. 4B1.2's career-

10  offender designation is untimely under § 2255(f)(3). The Supreme Court has not recognized the

11  right to bring a void-for-vagueness challenge to the mandatory sentencing guidelines. See

12  Blackstone, 903 F.3d at 1026. Until the Supreme Court recognizes that right, Williams's

13  challenge is premature.

14                             **B.  Williams's § 3559 Life Sentence Must be Vacated**

15        Having found Williams's § 3559 and § 924(c) challenges timely, the Court moves on to

16  the merits of those claims. Williams's first, and more substantial, challenge is to the mandatory

17  life sentence imposed under 18 U.S.C. § 3559's three-strikes rule. The three-strikes rule requires

18  a sentencing court to impose a life sentence on a defendant who is convicted of three separate

19  "serious violent felonies." 18 U.S.C. § 3559(c)(1)(A)(i). Not all felonies are considered "violent"

20  felonies under § 3559. The felony must fall into one of three buckets. The first way a felony

21  qualifies is if § 3559 explicitly lists the felony as a serious violent felony. Section 3559(c)(F)(i)'s

22  so-called enumerated clause defines serious violent felony as any federal or state offense

23  "consisting of murder (as described in section 1111); manslaughter other than involuntary

24  manslaughter (as described in section 1112); assault with intent to commit murder (as described

25  in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse

26  (as described in sections 2241 and 2242)" and several others. Id. § 3559(c)(F)(i).

27

28        [1] That is not to say that Williams's challenge to U.S.S.G. § 4B1.2 will never be timely. However, AEDPA prevents the challenge until the Supreme Court explicitly recognizes the right to collaterally attack a sentence based on the mandatory sentencing guidelines. At that time, 28 U.S.C. § 2255(f)(3)'s twelve-month clock will restart.

1     For felonies not enumerated, § 3559(c)(F)(ii) provides an elements clause and a residual

2  clause. The elements clause defines serious violent felony as an offense punishable by a

3  maximum term of imprisonment of ten years or more "that has an element the use, attempted

4  use, or threatened use of physical force against the person of another." <u>Id.</u> § 3559(c)(F)(ii). If

5  neither the enumerated clause nor the elements clause includes the supposed predicate offense,

6  § 3559's residual clause kicks in. The residual clause includes any offense punishable by ten or

7  more years in prison that "by its nature, involves a substantial risk that physical force against the

8  person of another may be used in the course of committing the offense." <u>Id.</u> § 3559(c)(F)(ii). So

9  long as Williams's predicate offenses and armed bank robbery conviction qualified as serious

10  violent felonies under one of § 3559(c)(F)'s three clauses, Williams would receive a life

11  sentence. The Court had no choice.

12     The United States disclosed its intent to seek § 3559's mandatory life sentence in a

13  criminal information, filed in February of 1999. The information listed two of Williams's prior

14  convictions that the government claimed constituted serious violent felonies: California

15  voluntary manslaughter (Cal. Penal Code § 192.1) and California attempted murder (Cal Penal

16  Code § 664/187). Information 1–2, ECF No. 32. The third serious violent felony would be

17  Williams's current armed bank robbery if he were convicted. Though the information designates

18  Williams's prior convictions serious violent felonies, it did not explain which of § 3559(c)(F)'s

19  prongs support that designation. At the time, however, that did not matter. Neither Williams nor

20  the Court challenged the notion that voluntary manslaughter, attempted murder, or armed bank

21  robbery qualified as serious violent felonies. Williams did not appeal the Court's classification of

22  his prior felonies, and this is the first time he has made such a challenge.

23     Now, however, Williams argues that none of his three felony convictions (voluntary

24  manslaughter, attempted murder, or armed bank robbery) qualify as serious crimes of violence

25  after <u>Johnson</u> because only § 3559(c)(F)(ii)'s residual clause could support the enhancement.

26  Williams continues that because <u>Johnson</u>, <u>Dimaya</u>, and <u>Davis</u> invalidated residual clauses that

27  were functionally identical to § 3559's, his mandatory life sentence is only valid if the

28  enumerated clause or elements clause covers his predicate offenses. Though Williams claims that

1    none of his three felonies are sufficient predicate offenses, he need only show that one of the

2    three convictions no longer qualifies. If he does so, Williams will not fall under § 3559's three-

3    strikes rule, and his mandatory life sentence will have to be vacated.

4           The Court agrees with Williams that § 3559(c)(F)(ii)'s residual clause is

5    unconstitutionally vague in light of Johnson, Dimaya, and Davis. Section 3559's residual clause

6    is nearly identical to the residual clause in § 924(c) that the Supreme Court invalidated in Davis.

7    139 S. Ct. at 2336. Title 18 U.S.C. § 924(c)(3)(B) and 18 U.S.C. § 3559(c)(F)(ii) each define a

8    violent felony as one that "by its nature, involves a substantial risk that physical force" will be

9    used against the person of another "in the course of committing the offense." The only difference

10   between the two clauses is that § 924(c)(3)(B) includes violence against the property of another,

11   whereas § 3559(c)(F)(ii) includes only violence against the person of another. While the

12   inclusion of threats to physical property in § 924(c) may be an important distinction for

13   categorical analysis, it is not the reason Davis found the residual clause unconstitutionally vague.

14   The problem lies in the statute's inclusion of any felony that "by its nature, involves a substantial

15   risk" of physical force. The residual clause expects sentencing judges to estimate the degree of

16   risk "posed by a crime's imagined ordinary case." Davis, 139 S. Ct. at 2326 (internal quotations

17   omitted). Such a "wide ranging" and "indeterminate" inquiry "invites arbitrary enforcement by

18   judges" and robs criminal defendants of fair notice before enhancing their sentence. Johnson,

19   135 S. Ct. at 2557.

20          The residual clause at 18 U.S.C. § 3559(c)(F)(ii) promotes the same indeterminate

21   inquiry and invites the same arbitrary enforcement by judges as the ACCA and § 924(c). As a

22   result, 18 U.S.C. § 3559(c)(F)(ii)'s residual clause is unconstitutionally vague and cannot support

23   Williams's sentence enhancement. Accordingly, Williams must show that at least one of his

24   predicate offenses of voluntary manslaughter or attempt murder or his current conviction for

25   armed bank robbery are not serious violent felonies under § 3559's enumerated or elements

26   clauses.

27          Williams argues that none of the three convictions qualify as serious violent felonies.

28   Common sense might suggest that Williams is wrong. Manslaughter, murder, and armed bank

- 14 -

1   robbery all *sound* like serious violent felonies. After all, each of those offenses involves either a

2   victim's unlawful death or, in the case of armed bank robbery, a victim being placed in fear for

3   of violence. However, the Supreme Court has made clear that common sense is not a good

4   indicator of whether a predicate offense qualifies as a violent crime.[2] Starting with Taylor v.

5   United States, the Supreme Court endorsed the categorical approach to determine whether an

6   underlying offense qualifies a crime of violence. 495 U.S. 575 (1990). The Taylor court

7   recognized the broad diversity in how different states define criminal offenses. Take the

8   definition of burglary, for example; when the Court decided Taylor, Michigan did not have a

9   formally labeled offense for burglary and instead punished similar conduct in a series of breaking

10  and entering offenses. 495 U.S. at 591 (citing Mich. Comp. Laws § 750.110 (1979)). Meanwhile,

11  California broadly defined burglary to include shoplifting and stealing from unoccupied vehicles.

12  Id. (citing Cal. Penal Code Ann. § 459 (West Supp. 1990). Despite that diversity, those state-law

13  convictions functioned to enhance a federal defendant's sentence. Given the variance in state

14  defined offenses, how is a federal court to know whether a defendant's prior convictions qualify

15  as a predicate offense for a sentencing enhancement? Enter the categorical approach.

16          The categorical approach attempts to cut through the varying state-based definitions of

17  individual offenses to determine whether a defendant's state conviction matches the generic

18  definition of the crime. The analysis focuses on the elements of the underlying crime and ignores

19  the facts of the individual offender's conduct in committing the offense. Descamps v. United

20  States, 570 U.S. 254, 263 (2013) ("a focus on the elements, rather than the facts, of a crime" is

21  the "central feature" of the categorical approach). To that end, the Court compares the statutory

22  elements of the defendant's underlying offense to the generic crime. Taylor, 495 U.S. at 602. If

23  the statutory elements of the underlying offense are the same or are narrower than the elements

24  of the generic offense, the two crimes are a categorical match, and the crime constitutes a crime

25  of violence. Descamps, 570 U.S. at 257. However, the underlying offense is not a crime of

26

27          [2] Indeed, the Supreme Court has mandated lower courts to analyze these questions "not through common understanding, but rather by comparing the elements of the state crime to the requirements of the federal statute." United States v. Shelby, 939 F.3d 975, 977 (9th Cir. 2019). The result is a comparison between the state version of a

28  criminal statute the so-called generic offense contemplated in the federal statute. How any layperson could be expected to alter their behavior based on this doctrine escapes the Court.

1   violence if its elements prohibit more conduct than the generic offense. Id. at 261. This is so even

2   if the defendant committed each of the elements of the generic crime. Id.; United States v.

3   Caceres-Olla, 738 F.3d 1051, 1054 (9th Cir. 2013).

4       Certain crimes, however, are not suitable for the formal categorical approach because

5   their elements encompass multiple generic offenses. See Nijhawan v. Holder, 557 U.S. 29, 35

6   (2009) (for example, the formal categorical approach is not suitable for a statute that prohibits a

7   nighttime breaking and entering into a "building, ship, vessel, or vehicle," which could be

8   charged as three separate crimes). These statutes are considered "divisible." A statute is not

9   divisible solely because it is listed in the disjunctive. United States v. Dixon, 805 F.3d 1193,

10  1198 (9th Cir. 2015). Rather, a disjunctive statute must create "alternative elements" as opposed

11  to merely "alternative means." Id. Alternative elements are essential to the jury's guilty verdict,

12  but alternative means are not. Id.

13      If the statute is truly divisible, it will be impossible to tell what offense the defendant

14  committed without considering the underlying facts. Descamps, 570 U.S. at 263. But the formal

15  categorical approach expressly prohibits considering the facts of the underlying offense. Taylor

16  v. United States, 495 U.S. 575, 600 (1990). In those rare cases, the Court employs a modified

17  version of the categorical approach—aptly named the "modified categorical approach." The

18  modified categorical approach allows the Court to consult a limited library of documents to

19  determine which of the divisible statute's offenses the defendant committed. Id. at 257. The

20  library may include the indictment, jury instructions, plea agreement, or plea colloquy that sheds

21  light on which of the statute's elements the defendant violated. See United States v. Martinez-

22  Lopez, 864 F.3d 1034, 1043 (9th Cir. 2017). The Court's objective under the modified

23  categorical approach remains the same as with the formal categorical approach: to compare the

24  elements of the underlying offense with the elements of the generic crime.

25      Williams contends that applying the categorical approach to his underlying convictions

26  will reveal that none of them qualify as a serious violent felony under § 3559. The government

27  counters that the categorical approach is unnecessary because Williams's predicate offenses fall

28  under § 3559's enumerated clause. Govt. Supp. Resp. 13 n.5, ECF No. 317. If Williams's

predicate offenses indeed qualify under the enumerated clause, <u>Johnson</u>'s effect on § 3559's residual clause will be rendered irrelevant. Alternatively, the government argues that Williams's California convictions for voluntary manslaughter and attempted murder and his federal conviction for armed bank robbery categorically qualify as crimes of violence despite <u>Johnson</u>.

The first question is whether the Court must apply the categorical approach given that Williams's predicate offenses are enumerated. The United States is correct that both manslaughter and murder appear in § 3559(c)(F)(i)'s enumerated clause. The statute states:

> (F) the term "serious violent felony" means - -

>> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of *murder* (as described in section 1111); *manslaughter* other than involuntary manslaughter (as described in section 1112) . . . .

18 U.S.C. § 3559(c)(F)(i) (emphasis added). The statute seemingly contemplated application of the enumerated clause to both federal and state offenses. <u>Id.</u> (serious violent felony includes "a Federal or State offense"). It also identified murder and manslaughter as the very first crimes that qualify as serious violent felonies. It would seem that Congress intended murder and manslaughter to qualify as serious violent felonies.

However, the enumerated crimes of murder and manslaughter are qualified by their respective parentheticals. <u>Id.</u> (State-law murder is enumerated if it matches the federal definition of murder in section 1111, and manslaughter is enumerated if it matches the federal definition section 1112). As a result, the enumerated clause only applies to state-law murder and manslaughter if the state statutes are categorical matches to the federal descriptions of murder or manslaughter in 18 U.S.C. §§ 1111 and 1112. <u>Id.</u> In essence, the Court cannot simply find that Williams's predicate offenses are serious violent felonies because § 3559(c)(F)(i) included murder and manslaughter. It must still apply the categorical approach to determine whether those convictions match the federal descriptions. <u>See</u> <u>United States v. VanHooser</u>, 790 Fed. Appx. 55, at *57 (9th Cir. 2019) (remanding a case to determine whether Oregon first-degree robbery is a serious violent felony under § 3559 despite robbery being enumerated).

- 17 -

The categorical approach reveals that Williams's predicate offense of voluntary manslaughter (Cal. Penal Code § 192.1) no longer qualifies as a serious violent felony under § 3559's enumerated clause or its elements clause. At the time of Williams's conviction, California defined voluntary manslaughter as "the unlawful killing of a human being without malice . . . upon a sudden quarrel or heat of passion." Cal. Penal Code § 192.1(a) (1981). The federal definition of voluntary manslaughter is identical. Federal voluntary manslaughter is "the unlawful killing of a human being without malice . . . [u]pon a sudden quarrel or heat of passion." 18 U.S.C. § 1112(a). On the surface, the two offenses seem to be a categorical match. However, California courts interpret the statute to criminalize a broader class of mental states than does the federal equivalent. In People v. Lasko, the Supreme Court of California determined that recklessness is a sufficient mental state for a defendant to be found guilty of voluntary manslaughter. 999 P.2d 666, 672 (Cal. 2000). Although many voluntary manslaughter cases involve intent to kill, "it is possible that a defendant who killed unintentionally but recklessly" has committed voluntary manslaughter. Id. (quoting United States v. Paul, 37 F.3d 496, 499 n.1 (9th Cir. 1994)). Because California voluntary manslaughter criminalizes mere recklessness, it is not a categorical match to the federal description of voluntary manslaughter.

The Ninth Circuit agrees that California manslaughter is not a crime of violence because it can be committed recklessly. United States v. Begay, 934 F.3d 1033, 1044 n.16 (9th Cir. 2019) (Smith, N.R., J., dissenting) (recognizing that although the Ninth Circuit has not determined whether federal voluntary manslaughter is a crime of violence, "California voluntary manslaughter is not a crime of violence, because a conviction requires 'merely reckless conduct'"). Quijada-Aguilar v. Lynch came to the same conclusion. 799 F.3d 1303, 1306 (9th Cir. 2015). There, the Ninth Circuit confronted California manslaughter in the immigration context. Facing removal, Quijada-Aguilar challenged his prior manslaughter conviction after an immigration judge and the Board of Immigration Appeals determined that the conviction was an aggravated felony that rendered Quijada-Aguilar ineligible for withdrawal of removal. After reviewing the California courts' interpretation of voluntary manslaughter, the Ninth Circuit concluded that California voluntary manslaughter "is not categorically a crime of violence

1    because it encompasses a broader range of criminal intent than the federal definition of a crime

2    of violence in 18 U.S.C. § 16." <u>Id.</u> at 1306.

3          Although <u>Quijada-Aguilar</u> evaluated California's voluntary manslaughter statute in the

4    immigration context, its reasoning is persuasive. The categorical approach asks the same

5    question in the INA context as it does in the § 3559 context. If California voluntary manslaughter

6    is not a crime of violence under 18 U.S.C. § 16, the Court sees no reason to find otherwise here.

7    Therefore, Williams's voluntary manslaughter conviction does not qualify as a serious violent

8    felony under § 3559(c)(F)(i)'s enumerated clause.

9          Given that California voluntary manslaughter is not a crime of violence under § 3559's

10   enumerated clause, Williams's mandatory life sentence will only stand if voluntary manslaughter

11   falls under the statute's elements clause. The elements clause of § 3559 includes any offense

12   punishable by a maximum term of ten years or more "that has as an element the use, attempted

13   use, or threatened use of physical force against the person of another." 18 U.S.C.

14   § 3559(c)(F)(ii). Neither party contests that voluntary manslaughter is an offense punishable by

15   ten or more years in custody. That leaves only whether California voluntary manslaughter

16   requires the use, attempted use, or threatened use of force against the person of another.

17         The Supreme Court has found that the "use of physical force" phrase in the INA required

18   an intentional act of force on another. Negligent or reckless force will not suffice to make a

19   crime qualify as a serious violent felony. <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 9 (2004). <u>Leocal</u>'s

20   "bedrock principle is that to constitute a federal crime of violence an offense must involve the

21   *intentional* use of force against the person or property of another." <u>Fernandez-Ruiz v. Gonzales</u>,

22   466 F.3d 1121, 1132 (9th Cir. 2006) (emphasis added). California voluntary manslaughter does

23   not qualify as a serious violent felony under § 3559's elements clause because it does not require

24   the use of intentional force against the person of another. Reckless use of force is, by definition,

25   not intentional. Accordingly, Cal. Penal Code 192(a) criminalizes more conduct than its federal

26   counterpart and does not qualify as a serious violent felony under 18 U.S.C. § 3559.

27         Because California voluntary manslaughter does not qualify as a serious violent felony,

28   Williams no longer has three predicate offenses on which to base § 3559's mandatory life

1  sentence. Having found that California voluntary manslaughter does not qualify as a serious

2  violent felony, the Court need not reach Williams's argument that California second degree

3  murder is not a serious violent felony. Therefore, the Court vacates Williams's mandatory life

4  sentence enhancement under 18 U.S.C. § 3559 and will schedule a resentencing.

5  **C.  Williams's § 924(c) Conviction Remains Valid**

6  Next, Williams challenges his conviction and sentence under 18 U.S.C. § 924(c). Unlike

7  Williams's § 3559 claim, which challenged an enhancement to his sentence, § 924(c) is an

8  independently indicted charge that punishes carrying a firearm in relation to a "crime of

9  violence" as a separate criminal act. A § 924(c) conviction yields a non-probationable,

10  consecutive sentence of at least five years. Id. § 924(c)(1)(D). The statute effectively has two

11  elements. The defendant must (1) possess a firearm (2) during the commission of a crime of

12  violence or drug trafficking crime. Williams does not dispute that he possessed a firearm, and the

13  parties agree that Williams was not charged with a drug trafficking crime. The parties disagree

14  whether Williams's underlying offense qualifies as a "crime of violence" under § 924(c).

15  Under § 924(c)(3), a felony qualifies as a "crime of violence" if it "has an element the

16  use, attempted use, or threatened use of physical force against the person or property of another,"

17  or if its nature "involves a substantial risk that physical force against the person or property of

18  another may be used in the course of committing the offense." Those two clauses have come to

19  be known as the elements clause and residual clause. The residual clause, which starts with the

20  language "that by its nature, involves a substantial risk," is invalid after United States v. Davis,

21  139 S. Ct. 2319, 2336 (2019). Like the ACCA's residual clause in Johnson and 18 U.S.C. § 16's

22  residual clause in Dimaya, § 924(c)'s residual clause created too much uncertainty in its

23  application to satisfy due process. Therefore, to qualify as a crime of violence under § 924(c),

24  Williams's alleged predicate offense must have "an element the use, attempted use, or threatened

25  use of physical force against the person or property of another."

26  The Court returns to the categorical approach to determine whether Williams's predicate

27  offense qualifies as a crime of violence. But first, the Court must determine what Williams's

28  predicate offense actually is. Williams claims that the predicate offense to his § 924(c)

1    conviction is conspiracy to commit armed bank robbery. The government counters that

2    Williams's predicate offense is substantive bank robbery. The confusion stems from the

3    superseding indictment, which listed "armed bank robbery, *as alleged in Count One* of [the

4    superseding] indictment" as predicate offense for Williams's § 924(c) violation. Superseding

5    Indictment 5–6, ECF No. 25 (emphasis added). The problem is that armed bank robbery is

6    actually count two of the superseding indictment, while count one is, indeed, conspiracy. The

7    jury's verdict form on the § 924(c) charge does not resolve the ambiguity as it merely found

8    Williams guilty "as charged in Count 3 of the superseding indictment." Verdict 2, ECF No. 78.

9    The distinction between substantive armed bank robbery and conspiracy matters because

10    conspiracy is likely not a crime of violence under § 924(c)'s elements clause while armed bank

11    robbery certainly is. Compare United States v. Watson, 881 F.3d 782, 786 (9th Cir. 2018) (armed

12    bank robbery categorically qualifies as a crime of violence), with United States v. Baires-Reyes,

13    191 F. Supp. 3d 1046, 1049 (N.D. Cal. June 7, 2016) (none of the elements of conspiracy

14    "require the use, attempted use, or threatened use of force" and can be satisfied by a non-violent

15    overt act).

16         Williams claims that the ambiguity in his superseding indictment requires the Court to

17    presume that conspiracy and not armed bank robbery is the predicate offense to his § 924(c)

18    conviction. Alternatively, he argues that even if substantive armed bank robbery is the predicate

19    offense, the Court must "presume [his] § 924(c) sentence rests on the residual clause." Pet.'s

20    Supp. to Mot. to Vacate 14, ECF No. 316. Williams points to United States v. Geozos for

21    support. 870 F.3d 890, 895–96 (9th Cir. 2017) (overruled on other grounds by Stokeling v.

22    United States, 139 S. Ct. 544 (2019)). Geozos recognized that a § 924(c) conviction is invalid if

23    it is unclear from the record whether it rested on a now-unconstitutional residual clause. Id. at

24    896 (citing Griffin v. United States, 502 U.S. 46, 53 (1991). Geozos also recognized that the

25    record and certain relevant background information could reveal that a sentencing court did not

26    rely on the residual clause when it fashioned its sentence. Id. at 896. Therefore, if the record

27    demonstrates that the Court did not rely on § 924(c)'s now-unconstitutional residual clause,

28    Williams's conviction could stand.

1    Williams cites to several examples of sentencing ambiguity that resulted in vacating

2    defendants' § 924(c) convictions. See Bachiller v. United States, 140 S. Ct. 101 (2019) (Mem)

3    (unclear whether predicate offense was conspiracy commit Hobbs Act Robbery or attempted

4    Hobbs Act Robbery); Martin v. United States, 140 S. Ct. 103 (2019) (Mem) (unclear whether

5    predicate offense was conspiracy to commit Hobbs Act Robbery or conspiracy to commit drug

6    trafficking offense); Rodriguez v. United States, 140 S. Ct. 43 (2019) (Mem) (unclear whether

7    predicate offense was conspiracy to commit Hobbs Act Robbery or conspiracy to violate

8    § 924(c)). Williams also cites to three similar cases from this district that he claims support

9    vacating his § 924(c) conviction. Pet.'s Supp. at 25–56 (collecting cases).

10   These cases are distinguishable because the record here demonstrates that armed bank

11   robbery—not conspiracy—served as the predicate offense for Williams's § 924(c) conviction

12   and that § 924(c)'s elements clause includes armed bank robbery. Admittedly, the superseding

13   indictment's reference to "armed bank robbery, as alleged in Count One" is confusing as count

14   one is actually conspiracy to commit armed bank robbery. However, when read as a whole, the

15   superseding indictment provided ample notice to Williams that he was being charged with the

16   substantive act of armed bank robbery, despite the indictment's errant heading. The overt acts

17   listed in count one of the superseding indictment adequately allege a crime of violence that

18   supports Williams's § 924(c) conviction. Count one alleges that Williams and his two

19   codefendants "acquired and possessed three firearms: one assault rifle, one shotgun and one

20   9mm handgun," that they drove to the Wells Fargo Bank at 401 N. Rancho Drive in Las Vegas,

21   Nevada, that Williams and one other defendant entered the bank armed with the shotgun and a

22   handgun, that they ordered patrons to the ground, and that one stood guard at the door while the

23   other jumped the counter to take cash from each of the teller drawers. Superseding Indictment at

24   3–4. If that is not enough, the very next page of the indictment specifically charged Williams

25   with armed bank robbery for essentially the same overt acts listed in count one. Accordingly,

26   there is ample evidence from the record that Williams's armed bank robbery charge, not his

27   conspiracy charge, served as the predicate offense for his § 924(c) conviction.

28

1    Undeterred, Williams argues that his conviction is still invalid because armed bank

2  robbery and aiding and abetting armed bank robbery are not crimes of violence. Neither

3  argument is persuasive. Count two of the superseding indictment charged Williams with "Armed

4  Bank Robbery; Aiding and Abetting." Superseding Indictment at 5. Williams reads that to mean

5  he was only charged with aiding and abetting an armed bank robbery. As stated, the indictment

6  makes clear that Williams committed the actual bank robbery. After all, he was one of the two

7  defendants who entered the bank with a weapon and stole over $70,000. And even if Williams

8  did not commit the robbery as a principal, aiders and abettors are generally punishable as

9  principals. See United States v. Garcia-Ortiz, 904 F.3d 102, 109 (1st Cir. 2018). Even so,

10  Williams was not only charged with aiding and abetting armed bank robbery. He was charged

11  with the substantive armed robbery as a principal. Then District Judge Rawlinson recognized as

12  much at sentencing. Sent. Trans. 4, ECF No. 313 (Williams was "found guilty of . . . Count Two,

13  armed bank robbery *and* aiding and abetting") (emphasis added). Because Williams was

14  convicted of the substantive armed bank robbery, that crime serves as the predicate offense to his

15  § 924(c) conviction.

16    Given that armed bank robbery and not conspiracy is the proposed predicate offense

17  under § 924(c), the question is whether armed bank robbery is a crime of violence under the

18  statute's elements clause. It is now settled law in the Ninth Circuit that armed bank robbery

19  categorically qualifies as a crime of violence. United States v. Watson, 881 F.3d 782, 786 (9th

20  Cir. 2018). Nevertheless, Williams asks the Court to find that Ninth Circuit is wrong. He argues

21  that Watson incorrectly applied the categorical approach, which tainted the holding. Pet.'s Supp.

22  at 32. As Williams knows, it is outside of this Court's authority to overrule valid Ninth Circuit

23  precedent whether it believes the Ninth Circuit's reasoning is correct or not. As a result, the

24  Court concludes that armed bank robbery categorically qualifies as a crime of violence under

25  § 924(c)'s elements clause. William's § 924(c) conviction and sentence, therefore, are valid.

26    **D.  Certificate of Appealability**

27    In all, the Court grants Williams's § 2255 petition in part and denies it in part. As to the

28  timeliness of Williams's claims, his challenges to § 3559 and § 924(c) are timely under Johnson.

1   Williams's challenge to the mandatory sentencing guidelines, however, is untimely because the

2   Supreme Court has not recognized a right to challenge the guidelines, nor has it made that right

3   retroactive on collateral review. As for the merits of Williams's § 3559 claim, Williams lacks

4   sufficient predicate offenses to support the mandatory life sentence he received. California

5   voluntary manslaughter is not a categorical match to the federal offense because it can be

6   committed unintentionally through reckless conduct. On the other hand, Williams's § 924(c)

7   claim fails on the merits because the predicate offense for that conviction is armed bank robbery,

8   which categorically qualifies as a crime of violence. Accordingly, the Court vacates Williams's

9   mandatory life sentence under § 3559's three-strikes rule.

10       Having granted Williams's petition in part and denied it in part, the Court now considers

11   whether to grant Williams a certificate of appealability. A certificate of appealability enables a

12   § 2255 petitioner to pursue appellate review of a final order. It is only available where the

13   petitioner has "made a substantial showing" of a constitutional deprivation in his § 2255 petition.

14   28 U.S.C. § 2253(c)(2); Welch v. United States, 136 S.Ct. 1257, 1263 (2016). A petitioner has

15   made a substantial showing of a constitutional violation if reasonable jurists could disagree

16   whether he has suffered such a deprivation. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

17       Williams prevailed on his § 3559 claim. As a result, a certificate of appealability is not

18   necessary. Williams's challenge to his career-offender enhancement (U.S.S.G. § 4B1.2) and his

19   challenge to § 924(c)'s five-year consecutive sentence both failed. The Court finds that a

20   certificate of appealability is warranted on Williams's challenge to the sentencing enhancement

21   but is not warranted on his § 924(c) challenge. Though the Court is confident in its finding that

22   Johnson did not open the door for federal defendants to challenge the mandatory sentencing

23   guidelines, it acknowledges that reasonable jurists could disagree on that fact. In Beckles v.

24   United States, 137 S. Ct. 886 (2017), the Supreme Court explicitly exempted the advisory

25   guidelines from the type of void-for-vagueness challenge present in Johnson, Dimaya, and

26   Davis. Beckles's reasoning makes sense. The advisory guidelines merely guide a sentencing

27   judge's discretion to fashion a sentence. They do not fix the offender's sentence like the now-

28   unconstitutional residual clauses of the ACCA and § 924(c). However, Williams was sentenced

1   under the mandatory guidelines, which did fix the offender's sentence. In that sense, the

2   mandatory guidelines functioned more like statutes than mere guidelines. Reasonable jurists

3   could disagree whether the mandatory sentencing guidelines—as opposed to the advisory

4   guidelines—would be subject to a void-for-vagueness challenge. Accordingly, the Court grants

5   Williams a certificate of appealability on his challenge to U.S.S.G. § 4B1.2(a).

6         Williams's § 924(c) challenge, on the other hand, does not warrant a certificate of

7   appealability. That claim boils down to whether Williams's predicate offense was armed bank

8   robbery or conspiracy to commit armed bank robbery. When taken as a whole, Williams's

9   superseding indictment provided him ample notice that armed bank robbery served as predicate

10  offense for his § 924(c) conviction. Given that armed bank robbery categorically qualifies as a

11  crime of violence in the Ninth Circuit, Williams's § 924(c) conviction is valid. Therefore, the

12  Court denies a certificate of appealability on Williams's § 924(c) challenge.

13  **IV.   Conclusion**

14        Accordingly, IT IS HEREBY ORDERED that Hakim Williams's Motion to Vacate, Set

15  Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 260) is **GRANTED in part and**

16  **DENIED in part**. Williams's mandatory life sentence imposed under 18 U.S.C. § 3559 is hereby

17  **VACATED**.

18        IT IS FURTHER ORDERED that a Certificate of Appealability is **GRANTED in part**

19  **and DENIED in part**. The Court **grants** a certificate of appealability on Williams's challenge to

20  U.S.S.G. § 4B1.2(a)(2) (1998) and **denies** a certificate of appealability on his challenge to 18

21  U.S.C. § 924(c)(3).

22        The Court will calendar Williams's resentencing, and each party will have an opportunity

23  to file sentencing memoranda in preparation for the hearing.

24  Dated this 10th day of July, 2020.

25

26  _____

27  Kent J. Dawson
    United States District Judge

28